Katelyn S. Oldham
Email: katelyn@miketlaw.com
TEDESCO LAW GROUP
12780 SE Stark St.
Portland, OR 97233

Richard G. McCracken
David L. Barber
Email: rmccracken@msh.law
        dbarber@msh.law
MCCRACKEN, STERMERMAN & HOLSBERRY, LLP
595 Market Street, Suite 800
San Francisco, CA 94105

*Attorneys for International Association of Sheet Metal, Air, Rail
and Transportation Workers Union, Local No. 16*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **TAYLOR SHEET METAL, INC.,** | No. 3:17-cv-00753-SB |
| Plaintiff, | DEFENDANT'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| **INTERNATIONAL ASSOCIATION OF SHEET METAL, AIR, RAIL AND TRANSPORTATION WORKERS UNION, LOCAL NO. 16,** | |
| Defendant. | |

# TABLE OF CONTENTS

PROCEDURAL HISTORY............................................................................... 1

PERTINENT FACTS ...................................................................................... 4

LEGAL STANDARDS .................................................................................... 4

ARGUMENT ................................................................................................... 4

    A.   Court review of labor-arbitration awards is limited and extremely deferential........ 5

    B.   The "favored nations" clause of the CBA does not deprive the Arbitration Panel of jurisdiction. ...................................................................................... 6

    C.   The CBA is not void or revocable because it is a § 8(f) agreement, notwithstanding Taylor's misrepresentation of the NLRB Regional Director's dismissal of Taylor's unfair labor practice charge. ..................................................... 8

    D.   The NLRA's one-person unit doctrine does not deprive the Arbitration Panel of jurisdiction because the question of whether Taylor effectively repudiated the CBA is reserved for an arbitrator, not the courts. .................................................. 12

        1. Even under the one-person unit rule, there is no question that the 2013-2016 CBA was lawful and binding. ...................................................................... 13

        2. In the present case Taylor is contractually obligated to submit a purported repudiation to arbitration...................................................................... 15

        3. The CBA's requirement to arbitrate "any controversy or dispute arising out of the failure of the parties to negotiate a renewal of this Agreement" distinguishes the present case from *Westlake* and *J.W. Peters*........................................................ 18

    E.   In the alternative, summary judgment in favor of Taylor must be denied, and discovery permitted, because there are genuine questions of material fact. ..........19

CONCLUSION............................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                      **Page(s)**

*AT&T Technologies, Inc. v. Communications Workers of America*,
    475 U.S. 643 (1986)...................................................................................19

*Beach Air Conditioning, Inc. v. Sheet Metal Workers Local 102*,
    55 F.3d 474 (9th Cir. 1995) ...................................................................... 10

*Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 v. Interstate*
    *Distributor Co.*, 832 F.2d 507 (9th Cir.1987)..........................................16

*Buckeye Check Cashing, Inc. v. Cardegna*,
    546 U.S. 440 (2006)..............................................................................16, 17

*Camping Construction Co. v. District Council of Iron Workers*,
    950 F.2d 1333 ............................................................................................16

*Foreign Car Center, Inc.*,
    129 NLRB 319 (1960) ...............................................................................13

*Haas Garage Door Co.*,
    308 NLRB 1186 (1992) .............................................................................14

*International Alliance of Theatrical Stage Employees v. InSync Show*
    *Productions, Inc.*,
    801 F.3d 1033 (9th Cir. 2015) ..............................................................13, 16

*J.W. Peters v. Int. Assoc. of Bridge, Structural and Reinforcing Iron Workers*,
    398 F.3d 967 (2005)..............................................................................18, 19

*James Luterbach Construction Co.*,
    315 NLRB 976 (1994) ..........................................................................11, 12

*Jim McNeff, Inc. v. Todd*,
    416 U.S. 260 (1983)..................................................................................14

*John Deklewa & Sons*,
    282 NLRB 1375 (1987), *enforced* 843 F.2d 770 (3d Cir. 1988) ........8, 9, 11, 12, 14

*Laborers Health & Welfare Tr. Fund for N. California v. Westlake Dev.*,
    53 F.3d 979 (9th Cir. 1995) ..............................................................14, 18, 19

*Local 58, Electrical Workers v. Southeastern Mich. Chapter, NECA*,
    43 F.3d 1026 (6th Cir. 1995) ....................................................................12

*Louis Rosenberg, Inc.*,
    122 NLRB 1450 (1959) ........................................................................................13, 14

*Luckenbach Steamship Co.*,
    2 N.L.R.B. 181 (1936) ...............................................................................................13

*M.R.S. Enterprises, Inc. v. Sheet Metal Workers Local 40*,
    429 F.Supp.2d 72 (D.D.C. 2006) ..............................................................................11

*Major League Baseball Players Ass'n v. Garvey*,
    532 U.S. 504 (2001) .....................................................................................................5

*McDaniel Electric*,
    313 NLRB 126 (1993) .................................................................................................14

*Mesa Verde Const. Co. v. Northern California Dist. Council of Laborers*,
    861 F.2d 1124 (9th Cir. 1988) (*en banc*) ....................................................................9

*Payne v. Local Lodge 698*,
    856 F. Supp. 2d 915 (E.D. Mich. 2012)......................................................................14

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
    388 U.S. 395 (1967).............................................................................................16, 17

*R.J. Smith Construction Co.*,
    191 NLRB 693 (1971), *remanded* 480 F.2d 1186 (D.C. Cir. 1973).........................8

*Republic of Nicaragua v. Standard Fruit Company*,
    937 F.2d 469 (9th Cir. 1991) .....................................................................................17

*NLRB v. Seedorff Masonry, Inc.*,
    812 F.3d 1158 (8th Cir. 2016) ...................................................................................14

*Sheet Metal Workers International Association v. McElroy's, Inc.*,
    500 F.3d 1093 (10th Cir. 2007) .................................................................................10

*Sheet Metal Workers Local 110 Pension Trust Fund v. Dane Sheet Metal, Inc.*,
    932 F.2d 578 (6th Cir. 1991) .....................................................................................10

*Sheet Metal Workers Local 162 (Dwight Lang's Enterprises)*,
    314 NLRB 923 (1994) ............................................................................................9, 11

*Sheet Metal Workers Local 20 (Baylor Heating and Air Conditioning)*,
    301 NLRB 258 (1991) ............................................................................................9, 11

*Sheet Metal Workers Local 20 v. Baylor Heating and Air Conditioning, Inc.*,
    877 F.2d 547 (7th Cir. 1989) ................................................................................10, 11

*Sheet Metal Workers Local 24 v. Architectural Metal Works, Inc.*,
259 F.3d 418 (6th Cir. 2001) ................................................10

*Sheet Metal Workers Local 57 Welfare Fund v. Tampa Sheet Metal Co.*,
786 F.2d 1459 (11th Cir. 1986) .............................................11

*Teledyne, Inc. v. Kone Corp.*,
892 F.2d 1404 (9th Cir. 1990) ..............................................17

*Textile Workers v. Lincoln Mills of Ala*,
353 U.S. 448 (1957)............................................................5

*UFCW Local 770 v. Geldin Meat Co.*,
13 F.3d 1365 (9th Cir. 1994) ........................................6, 8, 16

*United Paperworkers Int'l Union v. Misco, Inc.*,
484 U.S. 29 (1987)..............................................................5

*United Steelworkers of America v. Enterprise Wheel & Car Corp.*,
363 U.S. 593 (1960)............................................................5

*United Steelworkers v. Warrior & Gulf Navigation*,
363 U.S. 574 (1960)......................................................6, 16

**Statutes**

29 U.S.C. § 158(a)(5)........................................................13

29 U.S.C. §158(f)...........................................................3, 8

Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ...................................5, 14

**Other Authorities**

Fed.R. Civ. P. 56.............................................................4

Plaintiff, Taylor Sheet Metal, Inc. ("Taylor"), has moved for summary judgment on its petition to vacate an arbitration award that was duly issued under Taylor's collective-bargaining agreement with Defendant, the International Association of Sheet Metal, Air, Rail and Transportation Workers Union, Local No. 16 ("Union" or "SMART"). But Plaintiff's own pleadings show that, as a matter of law, the arbitration award is valid and enforceable. Plaintiff's petition raises three supposed bases for *vacatur*. All three issues were previously raised before the Arbitration Panel, which considered the issues and rejected them in the course of formulating its decision. Since the Arbitration Panel had the power to consider Plaintiff's objections, and did so, Plaintiff is not entitled to have the award vacated. Rather, as the Union has submitted by separate motion to this Court, judgment should be granted on the pleadings in favor of the Union's counterclaim to enforce the arbitration award.

## I. PROCEDURAL HISTORY

Taylor filed a petition to vacate the arbitration award on May 12, 2017. Dkt. 1. The Union filed a response to the petition on July 5, 2017, answering each allegation in the petition and adding a counterclaim for the enforcement of the arbitration award. Dkt. 9. Taylor answered the counterclaim on July 19, 2017. Dkt 10.

Taylor then moved for summary judgment on July 26, 2017. Dkt. 12. In this Motion, the Union moves for judgment on the pleadings in its favor. The Union is separately filing a Response in Opposition to that Motion, incorporating the same facts and many of the same arguments.

Plaintiff has filed a motion for summary judgment to vacate the arbitration award at issue in this case. Defendant now files a cross-motion to confirm the award.

## II. PERTINENT FACTS

Plaintiff Taylor admits it was signatory to a valid, enforceable collective-bargaining agreement ("CBA") with the Union. Petition ¶ 4 (Dkt. 1); Dkt. 1-3 (CBA excerpts). This "Standard Form" CBA includes mandatory arbitration of "any controversy or dispute arising out of the failure of the parties to negotiate a renewal of this agreement." Article X, Section 8, Dkt. 1-3 p. 6.  Taylor admits that the Union timely asked to negotiate a renewal beginning in March 2016, and that the subsequent negotiations were not successful at reaching an agreement. Petition ¶ 5. The Union notified Taylor in January 2017 that the parties had reached impasse, and the Union invoked Article X, Section 8 arbitration. Petition ¶ 8; Dkt. 1-6 (letter from Union to Taylor demanding arbitration). By letter of March 10, 2017, Taylor submitted objections that it also raises in its Petition to Vacate: that the "favored nations" clause of the CBA excuses Taylor from arbitrating the dispute about a renewal agreement, that the CBA is a § 8(f) agreement and that Taylor has only one employee. Dkt. 1-8 (Exh. F). By letter dated March 21, 2017, Taylor purported to repudiate the CBA. Dkt. 1-9 (Exh. G).

An Arbitration Panel designated by the National Joint Adjustment Board pursuant to Article X, Section 8 considered Taylor's objections. The Panel "determined that all procedural and jurisdictional requirements had been met." Dkt. 1-10 (Exh. F) p. 2.  The resulting arbitration award, issued on April 24, 2017, resolved the dispute over the renewal of the agreement and set the terms of a new agreement. The Arbitration Panel's decision was unanimous and therefore, under the terms of the CBA, final and binding.

In its Petition, Taylor asserts the Regional Director of the National Labor Relations Board "plaintiff was subject to [29 U.S.C. §158](f) allowing it to repudiate."  See Dkt 1, page 3, §14. Taylor's petition indicates that the letter is attached to the Petition, but it is not. However, Taylor

did provide the letter in its motion for summary judgment. See Dkt. # _12-6, Taylor Aff., Exhibit 6. The actual letter from the NLRB does not come to any such conclusion.  It also makes no reference to §158(f).  The letter only finds that the Plaintiff's unfair labor practice charge against the Union for refusing to bargain in good faith has no merit because the Plaintiff and Defendant have no *statutory* duty to bargain with one another.  This conclusion rested solely on the Employer's representation that it had only one employee. The Regional Director did not consider the parties' CBA language or engage in any substantive finding on this issue. Taylor now seeks to vacate the arbitration award, raising three of the same objections that it raised to the Arbitration Panel. Since those objections are without merit, and since they were within the exclusive jurisdiction of the Arbitration Panel and were resolved in its award, Taylor is not entitled to have the award vacated. Rather, as a matter of law, Taylor's petition and the exhibits it incorporates show that the Union is entitled to judgment on the pleadings in its counter-claim for enforcement of the award.

Taylor's Petition lists three reasons to vacate the arbitration award:

1. Under the favored nations clause, the union could not compel Plaintiff to engage in interest arbitration and the Panel thus lacked jurisdiction. Petition ¶ 12.

2. The Regional Director of the NLRB, in dismissing a charge filed by Plaintiff after a thorough investigation, stated that the Plaintiff was subject to § 8(f) of the NLRA, therefore "allowing it to repudiate" the CBA. Petition ¶ 14.

3. Under the NLRA's "one man" rule, Plaintiff was entitled to and did repudiate the CBA, inclusive of Article 10, Section 8. Petition ¶ 15.

In its motion for summary judgment, Plaintiff appears to have abandoned the second reason, based on Section 8(f).  The first section of the argument (repudiation) focuses on the "one person unit" point.  The second part of Plaintiff's argument in its motion (favored nations clause) is only about Plaintiff's claim that the favored nations provision enabled it to disregard Article X,

Section 8 of the CBA.  Even though Plaintiff claims that it presented the arbitrators with its claim that it "had an § 8(f) agreement it was entitled to and had repudiated," Plaintiff's Memorandum states, "unless required by order of this court, only the favored nations clause will be addressed." Plaintiff's Memorandum, p. 7.  Nevertheless, because it is asserted in the petition as one of the grounds for vacating the award, Defendant will address and rebut it.

## III.  LEGAL STANDARDS

Under Fed.R.Civ.P. 56, summary judgment is appropriate when there are no genuine disputes of material fact and the moving party is entitled to a judgment as a matter of law.

## IV.  ARGUMENT

Taylor has not shown that it is entitled to judgment as a matter of law.  All of Taylor's proffered defenses—the reasons to vacate stated in the petition—were proper subjects for arbitration and were disposed of by the arbitration award dated April 24, 2017. *See* Dkt 1-10, pages 2-4. There is no valid basis upon which to vacate the arbitration award.

In its petition, Taylor offers three bases for *vacatur*. The first is a claim that the "favored nations clause" of the CBA, in combination with CBAs signed by other employers, entitled Taylor to jettison the arbitration provision of the contract. Petition ¶ 12. This claim involves a tendentious interpretation of the CBA and is an issue for arbitration, not the court. To the extent that this is an issue for the court, it can be resolved as a matter of law on the pleadings and contract language offered in the pleadings, since it cannot be said with positive assurance that the "favored nations clause" excuses Taylor from its promise to arbitrate.

Taylor's second excuse is that the Regional Director of the NLRB said that Taylor, as a party to a § 8(f) agreement, was permitted to repudiate the agreement including its arbitration clause. Petition ¶ 14. The Regional Director said nothing of the sort and more importantly,

Taylor's argument here has been considered in various forms and consistently rejected by the courts and the NLRB.

Taylor's third excuse is that it was entitled to repudiate, and did in fact repudiate, the CBA prior to the arbitration award under the "one man" or one-person unit doctrine. Petition ¶ 15.  But even if the one-person unit rule were applicable, that would render the CBA *revocable*, not void. And the arbitration clause of Article X, Section 8 of the CBA clearly makes a party's attempt at revocation after a bargaining impasse a question that is reserved for the arbitrator, not the courts.

### A.  Court review of labor-arbitration awards is limited and extremely deferential.

Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, gives federal courts jurisdiction to vacate or confirm arbitration awards rendered pursuant to a collective-bargaining agreement. *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 (1960). Federal substantive law, developed by the courts, it to be applied. *Textile Workers v. Lincoln Mills of Ala*, 353 U.S. 448, 456 (1957). There are limited grounds for vacating a labor arbitration award under § 301: if the arbitrator fails even arguably to construe or apply the contract but instead applies his "own notions of industrial justice," *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987); the award is "procured by the parties through fraud or through the arbitrator's dishonesty," *id.*; or the award violates explicit, "well defined and dominant" public policy, *id.* at 44. "Where an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's 'improvident, even silly, fact finding' does not provide a basis for a reviewing court to refuse to enforce the award." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001), quoting *Misco*, 484 U.S. at 39.

Another basis for vacating an arbitration award is if the award was issued outside of the arbitrator's authority. This occurs when a particular issue is outside of the agreement to arbitrate, yet the arbitrator proceeds to decide that issue. Whether an issue falls within the scope of the parties' agreement to arbitrate is, in the first instance, an issue for the courts to decide. "[T]o be consistent with congressional policy in favor of settlement of disputes by the parties through the machinery of arbitration, the judicial inquiry under § 301 must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator power to make the award he made." *Warrior & Gulf* 363 U.S. at 582.

The Supreme Court has directed that when a court considers whether a given issue is within the scope of a labor arbitration clause, the clause is to be interpreted expansively. An issue is arbitrable—within the arbitrator's power to resolve—"unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Warrior & Gulf*, 363 U.S. at 582-83. In other words, unless the CBA clearly excludes an issue from arbitration, it is left to the arbitrator to decide – with finality – how to resolve the dispute. Once the court has determined that an issue arguably comes within the scope of the parties' agreement to arbitrate, it may not determine the merits of the dispute between the parties under the guise of deciding questions of arbitrability. "Further inquiry would require [the court] to delve into an area of contract interpretation which the Supreme Court has clearly mandated as the arbitrator's realm." *UFCW Local 770 v. Geldin Meat Co.,* 13 F.3d 1365, 1368 (9th Cir. 1994).

## B. The "favored nations" clause of the CBA does not deprive the Arbitration Panel of jurisdiction.

Taylor claims that the Arbitration Panel had no jurisdiction because Taylor escaped its obligations under Article X, Section 8 of the CBA by invoking the "favored nations" provision

of the agreement and pointing to the fact that the Union entered into an agreement with another contractor in which Article X, Section 8 applied only by mutual agreement.  Taylor's interpretation is wrong, but more importantly the scope of the "favored nations" provision must be determined by the arbitrators, not a court.

The "favored nations" clause is in Addendum I, ¶6 of the collective bargaining agreement.  Dkt. 1-3, Exh. A, p. 10.  It provides:

> If the union shall enter any agreement different in its terms from this Agreement, with any Employer or group of Employers, any Employer signatory hereto shall have the right to avail themselves of the terms and conditions of any such agreement in the performance by them of any class of work covered by such particular agreement.

On its face, this clause is about the terms and conditions of employment to be applied in the performance of work.  It does not refer to the agreement as a whole.  In particular, it does not refer to the duration of the agreement, negotiations, or dispute resolution mechanisms, so Taylor's contention that the clause permits Taylor to escape its arbitration obligations is not supported by the text of the agreement.

In any event, what is dispositive for the present case is that interpretation of the scope of the "favored nations" clause is not for the court but for the arbitration procedure in the collective bargaining agreement.  Article X of the CBA (Petition, Exh. A, Dkt. 1-3, pp. 4-5) deals with resolution of "Grievances of the Employer or the Union arising out of interpretation or enforcement of this Agreement."  The parties must first address grievances between themselves. Sec. 1.  If they are unable to resolve a dispute, it must be submitted to the Local Joint Adjustment Board.  Sec. 2.  If the Local Board deadlocks, the matter is referred to an Arbitration Panel appointed by the Co-Chairmen of the National Joint Adjustment Board.  Sec. 3.

The grievance and arbitration provisions of the collective bargaining agreement are the exclusive means for resolving questions of how the agreement should be interpreted.  Under

*Geldin Meat Co.* and the other cases cited above, arbitration was Taylor's only option if it wanted to resolve how the favored nations clause should be interpreted. The Arbitration Panel rejected Taylor's argument. That Panel's decision should be the end of the matter.

**C. The CBA is not void or revocable because it is a § 8(f) agreement, notwithstanding Taylor's misrepresentation of the NLRB Regional Director's dismissal of Taylor's unfair labor practice charge.**

According to Taylor, it had a statutory right to repudiate its agreement, and thereby free itself from its interest arbitration obligation.[1] This is not a novel argument. The courts and the NLRB have considered and rejected it many times.

The Agreement is a "pre-hire" agreement governed by §8(f) of the National Labor Relations Act, 29 U.S.C. §158(f). Prior to 1987, federal labor law allowed parties to repudiate §8(f) agreements at any time. *See R.J. Smith Construction Co.*, 191 NLRB 693 (1971), *remanded* 480 F.2d 1186 (D.C. Cir. 1973). This changed with *John Deklewa & Sons*, 282 NLRB 1375 (1987), *enforced* 843 F.2d 770 (3d Cir. 1988). In *Deklewa*, the NLRB held that contracting parties may not repudiate §8(f) agreements during their term. 282 NLRB at 1387.

---

[1] Plaintiff asserts the Regional Director of the National Labor Relations Board "found that the Employer had entered into a pre hire agreement under 29 U.S.C. §158(f) and was entitled to repudiate both the existing and imposed Agreements." Statement of Facts, ¶11. Plaintiff repeats and relies on this representation elsewhere in his memorandum. Plaintiff's Memorandum, p. 6.The actual document belies this statement. The Regional Director's letter dismissing Plaintiff's unfair labor practice charge makes no mention of either agreement, let alone any right to repudiate them. Dkt. 12-6, Taylor Aff. Exh. 6. It also makes no reference to §158(f). The letter only finds that the Plaintiff's unfair labor practice charge against the Union for refusing to bargain in good faith has no merit because the Plaintiff and Defendant have no *statutory* duty to bargain with one another. This conclusion rested solely on the Employer's representation that it had only one employee. The Regional Director did not consider the parties' CBA language nor excuse Taylor's performance of its contractual obligations; nor did the Regional Director have the power to excuse performance.

*Deklewa* restored §8(f) agreements to the normal operation of contract law.  The NLRB

stressed  the importance of holding employers and unions to their promises:

> Importantly, this limited obligation is not imposed on unwitting employers.
> Rather, it is a reasonable *quid pro quo* that is imposed  only when an employer
> voluntarily recognizes the union, enters  into a collective-bargaining agreement,
> and then sets about  enjoying the benefits and assuming the obligations of the
> agreement.

*Deklewa*, 282 NLRB at 1387.  The Ninth Circuit approved *Deklewa* in *Mesa Verde Const.*

*Co. v. Northern California Dist. Council of Laborers*, 861 F.2d 1124, 1126 (9th Cir. 1988) (*en*

*banc*).  The Ninth Circuit agreed that "the *Deklewa* non-repudiation rule appears

consistent with the legislative history of section 8(f), as well as the dominant principles

of employee free choice and labor relations stability."  861 F.2d at 1134.

As Taylor points out, employers and unions may stop bargaining  with each other once

their §8(f) contractual obligations have expired.  *See Deklewa*, 282 NLRB at 1386.  But this

begs the question of *when* these  contractual obligations end.  The National Labor Relations Act

does not dictate the duration of a §8(f) agreement. Rather, the parties define the duration of

their agreement in the terms of the contract.  If the parties agree in advance to an  automatic

renewal of their Agreement, or to enter into a successor agreement  on arbitrated terms, they

have no special right under *Deklewa* to repudiate that promise.  *Sheet Metal Workers Local 20*

*(Baylor Heating and Air  Conditioning)*, 301 NLRB 258, 260 (1991); *Sheet Metal Workers*

*Local 162 (Dwight Lang's Enterprises)*, 314 NLRB 923, 927 (1994).

Taylor assumes that the Agreement expired on June 30, 2016.  In  Article XVI, Section

1, however, the parties agreed to extend their agreement *past* June 30, 2016, through the

completion of interest arbitration  proceedings for another term. See Dkt. 1-3 p. 8, Art. XVI

Section 1. This extension occurs upon timely written notice of reopening the contract, *id.*,

which Taylor admits was given, Petition ¶ 5. The contractual extension of the Agreement prevents the Employer from repudiating it. Once arbitration resolved the terms for the renewed contract period, the Employer must honor these terms as part of its original bargain. In effect, the parties agreed in advance to a contract covering two consecutive periods – from July 1, 2013 to June 30, 2016 with fixed terms, and a successor period with arbitrated terms. See *Beach Air Conditioning, Inc. v. Sheet Metal Workers Local 102*, 55 F.3d 474, 478 (9th Cir. 1995), and cases cited therein.

The Employer received substantial consideration for this bargain, including  the Union's obligation not to strike or picket to win a better contract, access to the union's health plan, and a supply of trained workers and the ability to bid on jobs restricted to union contractors. Having  received the benefit of the Union's consideration, the Employer may not repudiate its own obligations.

There is a large body of precedent  interpreting Article X, section 8 of the Sheet Metal Workers standard  agreement.  The federal courts have consistently rejected the arguments  the Employer makes here.  "We have previously construed the terms of virtually  identical contracts and repeatedly held that Article X, section 8 and Article XIII,   section 1 [of the Sheet Metal Workers standard agreement] read together  'represent the parties' agreement to negotiate a renewal agreement, and, if no  agreement is forthcoming, to submit their dispute to the NJAB for interest arbitration.'"  *Beach Air Conditioning, Inc.*,  55 F.3d at 476-479, *quoting Sheet Metal Workers Local 162 v. Jason Mfg., Inc.,* 900 F.2d 1392, 1396 (9th Cir.1990); *see  also Sheet Metal Workers International Association v. McElroy's, Inc.*, 500 F.3d 1093 (10th Cir. 2007); *Sheet Metal Workers Local 24 v. Architectural Metal Works, Inc.*, 259   F.3d 418, 429 (6th Cir. 2001); *Sheet Metal Workers Local 110 Pension Trust  Fund v. Dane Sheet Metal, Inc.*, 932 F.2d 578,

581-82 (6th Cir. 1991); *Sheet Metal Workers Local 20 v. Baylor Heating and Air Conditioning, Inc.*, 877  F.2d 547, 556 (7th Cir. 1989); *Sheet Metal Workers Local 57 Welfare Fund v.  Tampa Sheet Metal Co.*, 786 F.2d 1459, 1460-61 (11th Cir. 1986); *M.R.S. Enterprises, Inc. v. Sheet Metal Workers Local 40*, 429 F.Supp.2d 72, 79  (D.D.C. 2006) ("Under *Deklewa,* a party is not required to bargain after its  contractual obligations have expired. [*cit. om.*] However, when an agreement  specifies that the parties must negotiate for a successor term, the contractual obligations do not end at the expiration of the agreement without negotiations.  [*cit. om.*] Article X, Section 8 of the Sheet Metal Workers Standard Agreement  binds employers to negotiate for a successor period and therefore extends the  parties' contractual obligations through this period.")

The NLRB has also repeatedly upheld Article X, section 8  interest arbitration against employers who claim *Deklewa* gives them a right to  repudiate it:

> The Board has found that *Deklewa* does not preclude a finding that  an 8(f) agreement may, in appropriate circumstances, automatically renew. [cite] Similarly, we find that it does not  preclude the inclusion of an interest arbitration provision.  Like a  provision for automatic renewal, an interest arbitration provision contemplates a renewal of the agreement.  It differs principally by leaving open the terms and prescribing a means of resolving  disputes arising from the failure to negotiate the renewal.
>
> Here, the interest arbitration clause requires submission to NJAB  following any "failure of the parties to negotiate a renewal of this  Agreement." Thus, the clause, at least arguably, binds the  Employer to a renewal of the agreement and to the NJAB  resolution of disputes concerning that renewal.  In these circumstances, it may be argued that the parties have agreed to  extend their voluntary contractual relationship beyond the  expiration date and that the *Deklewa* privilege to repudiate had not  yet been triggered at the time of the NJAB submission.

*Sheet Metal Workers Local 20 (Baylor Heating and Air Conditioning)*, 301  NLRB at 260; *see also Sheet Metal Workers Local 162 (Dwight Lang's Enterprises)*, 314 NLRB 923, 927 (1994).

In *James Luterbach Construction Co.*, 315 NLRB 976, 978 (1994), the NLRB stressed that an employer may "*obligate itself* to abide by a successor agreement."  315 NLRB  at 978

(emphasis in original).  In that situation, the employer is not free to  repudiate its contractual

promise.  *Luterbach*, 315 NLRB at 978-979 (citing  multiple NLRB decisions that an employer

may not repudiate under *Deklewa* where it has voluntarily bound itself to a successor

agreement). This is an obligation that binds unions as well as employers.  *See Local  58,*

*Electrical Workers v. Southeastern Mich. Chapter, NECA*, 43 F.3d 1026,   1031 (6th Cir. 1995)

(enforcing interest arbitration award against union, which  claimed the right to seek a better

agreement.)

     Taylor's contention that it may avoid its duty to arbitrate because the CBA is an 8(f)

agreement is therefore contrary to established law and precedent and should be rejected.

**D. The NLRA's one-person unit doctrine does not deprive the Arbitration Panel of jurisdiction because the question of whether Taylor effectively repudiated the CBA is reserved for an arbitrator, not the courts.**

     Taylor invokes the "one-person unit" doctrine to claim the entire CBA was void and thus

that the Arbitration Panel lacked jurisdiction to issue its award. The one-person unit doctrine is,

at most, a doctrine about the *revocability* of labor contracts.  However, in this case the parties

contracted out of permitting the courts or the NLRB to rule on the revocation of the CBA if

impasse is reached in negotiations. The arbitration provision of the CBA makes Taylor's

purported unilateral repudiation of the CBA an issue for mandatory arbitration. Having agreed to

in the arbitration provision of the CBA to arbitrate the issue, Taylor cannot now bring the merits

of that dispute to this Court for resolution. This Court's role is limited to determining whether

the CBA was readily susceptible to an interpretation that the repudiation was arbitrable. Since

the CBA made repudiation arbitrable, this Court should enforce the arbitration award that

considered but rejected Taylor's contention that it had effectively repudiated the contract.

Even if the one-person unit rule might normally be applicable to Taylor's collective bargaining, that rule does not come into operation here and does not permit Taylor to repudiate the collective-bargaining agreement. Taylor and the Union have agreed to submit all questions that arise from a failure to negotiate a new agreement to arbitration. Article X, Section 8 of the CBA states, "[A]ny controversy or dispute arising out of the failure of the parties to negotiate a renewal of this Agreement shall be settled as hereinafter provided." Dkt. 1-3, Exh. A, p. 6. By this express arbitration agreement, Taylor and SMART have opted out of judicial resolution of issues of contract repudiation when, as here, impasse in negotiating a new agreement has been reached. *See International Alliance of Theatrical Stage Employees v. InSync Show Productions, Inc.*, 801 F.3d 1033, 1042-1043 (9th Cir. 2015), and cases cited therein. Taylor now asks the Court to address the merits of a controversy that was the exclusive domain of the Arbitration Panel and was in fact resolved in arbitration. The role of this Court here is merely to decide whether the alleged repudiation was arbitrable under the parties' agreement and, if so, to enforce the arbitration award.

1. **Even under the one-person unit rule, there is no question that the 2013-2016 CBA was lawful and binding.**

A single-employee unit is lawful, because an employer may consent to bargain with a representative of a single employee. *Louis Rosenberg, Inc.*, 122 NLRB 1450 (1959). The one-person unit rule is an NLRB doctrine that holds that the NLRB will not certify a union as a collective-bargaining representative if the bargaining unit includes just a single person. *Luckenbach Steamship Co.*, 2 N.L.R.B. 181, 193 (1936). The NLRB extended the doctrine to hold that an employer does not violate the statutory duty to bargain, NLRA § 8(a)(5), 29 U.S.C. § 158(a)(5), by unilaterally repudiating a collective-bargaining agreement that covers a one-

person bargaining unit, even in the middle of the term of the agreement. *Foreign Car Center, Inc.*, 129 NLRB 319 (1960).

Prehire agreements under § 8(f) of the NLRA are valid and binding even if there are *no* employees currently employed in the bargaining unit, and in ordinary circumstances an employer may not unilaterally repudiate an 8(f) agreement. *Deklewa*, 282 NLRB 1375 (1987).  However, the one-person unit rule has been extended to § 8(f) pre-hire agreements in certain circumstances despite the logical conflict with § 8(f). *Laborers Health & Welfare Tr. Fund for N. California v. Westlake Dev.*, 53 F.3d 979, 981 (9th Cir. 1995); *Haas Garage Door Co.*, 308 NLRB 1186 (1992).  Since employment levels fluctuate greatly over time in the construction industry, the doctrine only applies when the single-person unit "is a stable one, not merely a temporary occurrence." *NLRB v. Seedorff Masonry, Inc.*, 812 F.3d 1158, 1168 (8th Cir. 2016); *McDaniel Electric*, 313 NLRB 126 (1993).

Absent repudiation, however, an 8(f) agreement that covers only a single employee or even no employees is valid and enforceable. The NLRB has long recognized that an employer may *consent* to bargain with a union about a single employee, even if the NLRA does not require the employer to do so. "The fact that the Board will not certify a one-man unit does not, of course, mean that the unit is inherently inappropriate under Section 9(a) of the Act." *Louis Rosenberg, Inc.*, 122 NLRB at 1453. Such agreements are enforceable unless effectively voided or repudiated. *Payne v. Local Lodge 698*, 856 F. Supp. 2d 915, 923 (E.D. Mich. 2012).  In practice, 8(f) agreements are often executed and enforced during periods of time when an employer has *no* employees in the bargaining unit.  Like other collective-bargaining agreements, 8(f) agreements are enforceable under § 301 of the LMRA, 129 U.S.C. § 185. *Jim McNeff, Inc. v. Todd*, 416 U.S. 260 (1983).

Taylor admits in the petition that it voluntarily executed at least two collective-bargaining agreements with SMART, once as a sole proprietorship and again as a corporation. Dkt. 1 ¶ 4. There is no suggestion in Taylor's petition that these CBAs were unlawful when Taylor agreed to them.  The question here, therefore, is whether Taylor's letter of March 21, 2017 (Dkt. 1-9), purporting to repudiate the CBA, was effective.

### 2.  In the present case Taylor is contractually obligated to submit a purported repudiation to arbitration.

In the arbitration proceeding, Taylor argued that the contract was repudiated. The Arbitration Panel found against him. See Dkt. 1-10 p. 2. Taylor cannot now attempt to relitigate this settled matter in court. Since the parties' CBA expressly requires that questions about repudiation of the CBA be resolved by means of arbitration, the arbitration award on this subject was a valid exercise of the Arbitration Panel's jurisdiction and must be enforced by this Court.

Article X, Section 8 of the CBA states that in addition to the usual arbitration of grievances, "any controversy or dispute arising out of the failure of the parties to negotiate a renewal of this Agreement shall be settled as hereinafter provided." Dkt. 1-3, Exh. A, p. 6.  The remainder of the section sets forth an arbitration procedure before an Arbitration Panel and, if the Panel deadlocks, before the entire National Joint Adjustment Board. Only if the Board deadlocks is the no-strike and no-lockout provision excused. Article X, Section 8 thus functions as an alternative to, or at least a temporary stay of, the usual economic warfare that unions and employers may resort to upon reaching impasse. This additional labor peace due to Article X, Section 8 arbitration is valuable consideration for both parties to the agreement.

In enforcing an agreement to arbitrate labor disputes contained in a collective-bargaining agreement, "the judicial inquiry under § 301 must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator power to

make the award he made." *Warrior & Gulf*, 363 U.S. at 582-83.  A court must order arbitration

where the collective bargaining agreement is "readily susceptible to an interpretation" under

which a dispute is arbitrable.  *Geldin Meat Co.,* 13 F.3d at 1368.  "Further inquiry would require

[the court] to delve into an area of contract interpretation which the Supreme Court has clearly

mandated as the arbitrator's realm."  *Id.*, citing *Warrior & Gulf*, 363 U.S. at 582-583.

The question whether an agreement including a promise to arbitrate has been terminated

is for the arbitrator to decide, not a court, as explained by the Ninth Circuit:

> In *Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 v. Interstate Distributor Co.,* [832 F.2d 507 (9th Cir.1987)] we set forth the general rule applicable in cases presenting questions relating to disputes over termination or repudiation of collective-bargaining agreements: "[W]hen the collective bargaining agreement contains a customary arbitration clause, acts of repudiation and other acts of termination must be submitted to arbitration." 832 F.2d 507, 511 n. 4 (9th Cir.1987). That rule applies whether the dispute between the parties is solely over termination or repudiation, or whether, as here, their disagreement over that question is a threshold issue that must be resolved before the underlying dispute can be reached.

*Camping Construction Co. v. District Council of Iron Workers*, 950 F.2d 1333, 1338 (9th Cir.

1990). *Accord, International Alliance of Theatrical Stage Employee v. InSync Show Productions,

Inc.*, 801 F.3d at 1042-1043 (question whether the employer effectively terminated a union

contract despite its "evergreen" clause is for the arbitrator).  This case is an even better vehicle

for the application of this principle.  The previous cases involved a standard arbitration clause

about submitting all disputes about the interpretation of the agreement to arbitration.  The CBA

between Taylor and the Union has both this standard provision (Article X, Section 1) *and* a

special provision expressly identifying disputes over the renewal of the CBA as being arbitrable

(Article X, Section 8).

The doctrine of deferring a purported repudiation to arbitration reflects the approach of

the Supreme Court to arbitration generally.  *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388

U.S. 395, 403-405 (1967); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 448 (2006).

Based on *Prima Paint*, where a party to a contract containing an arbitration clause defends by

arguing the invalidity of the contract as a whole—as opposed to the invalidity of the agreement

to arbitrate—the party merely raises an avoidance defense that must be brought in the first

instance to an arbitrator. *See Buckeye Check Cashing, Inc.*, 546 U.S. at 448 (recognizing that

*Prima Paint* permits "a court to enforce an arbitration agreement in a contract that the arbitrator

later finds to be void."); *Republic of Nicaragua v. Standard Fruit Company*, 937 F.2d 469, 476

(9th Cir. 1991) ("[a]n arbitration clause may . . . be enforced even though the rest of the contract

is later held invalid by the arbitrator." ); *see Teledyne, Inc. v. Kone Corp.*, 892 F.2d 1404, 1410-

1412 (9th Cir. 1990) ( "The teaching of *Prima Paint* is that a federal court must not remove from

the arbitrators consideration of a substantive challenge to a contract unless there has been an

independent challenge to the making of the arbitration clause itself.").

    Here, the question of whether Taylor's purported repudiation was effective was plainly

within the Arbitration Panel's power to decide.  Taylor's petition states that the instant dispute

between Taylor and SMART arose after the CBA was reopened in March 2016 and "negotiations

did not result in the parties reaching an agreement." Petition, Dkt. 1 ¶ 5.  The Union told Taylor

that negotiations were at impasse and demanded arbitration pursuant to the Article X, Section 8

procedure. Petition, Dkt. 1 ¶ 8. That demand for arbitration was thus within the scope of what

Article X, Section 8 calls for.

    Taylor raised its purported repudiation as a defense in the arbitration proceeding. *See*

Dkt. 1-10 p. 1 ("The Employer, through counsel raised several objections to the proceeding in

written correspondence to the NJAB."); Dkt. 1-9 (Letter of March 21, 2017 from Taylor's

counsel purporting to repudiate the CBA). The Arbitration Panel considered but rejected the

purported repudiation. Dkt. 1-10 p.1 ("Those objections were considered, but it was decided that all procedural and jurisdictional requirements had been met.")  The purported repudiation, raised after impasse was announced and arbitration was demanded, was plainly a "controversy or dispute arising out of the failure of the parties to negotiate a renewal of" the CBA. It is therefore an issue that the parties agreed to arbitrate, and the Arbitration Panel acted within its jurisdiction in deciding it.  If Taylor had not raised the issue, it would have been waived.  A party cannot avoid arbitration of an issue by not submitting it.

3.   **The CBA's requirement to arbitrate "any controversy or dispute arising out of the failure of the parties to negotiate a renewal of this Agreement" distinguishes the present case from *Westlake* and *J.W. Peters*.**

In *Laborers Health & Welfare Tr. Fund for N. California v. Westlake Dev.*, 53 F.3d 979, 981 (9th Cir. 1995), the Ninth Circuit applied the NLRB "one-employee unit rule." which "provides that employers need not participate in collective bargaining if they have only a single employee who falls within the collective bargaining unit."  The employer had sent the union a notice of repudiation, and it was undisputed that the employer had "never employed more than one individual performing laborer's work." *Id.* at 981. Under those circumstances, the Ninth Circuit held that the employer "lawfully repudiated the CBA under the one-employee unit rule." *Id.* at 984. This successful repudiation meant that a subsequent arbitration was beyond the Arbitration Panel's jurisdiction. *Id.*

The Seventh Circuit held the same in *J.W. Peters v. Int. Assoc. of Bridge, Structural and Reinforcing Iron Workers*, 398 F.3d 967 (2005). There, an employer that had employed no ironworkers for at least a year sent the union a letter repudiating the Ironworkers CBA. Relying on the one-employee unit rule and *Westlake*, the Seventh Circuit held that the employer's

repudiation of the CBA was effective and relieved it of its contractual duty to arbitrate. *Id.* at 977.

Westlake and *J.W. Peters* do not apply here.  Both cases applied the NLRB's one-person unit rule to hold that an employer *who has effectively repudiated* a collective-bargaining agreement is no longer bound by that agreement's arbitration provision.  But in the present case, Taylor has not effectively repudiated the CBA. By contrast with the CBAs in *Westlake* and *J.W. Peters*, the agreement here requires the employer and union to submit the question of contractual repudiation to arbitration, a feature conspicuously missing from the agreements in those cases.

Since Taylor's ability to repudiate the CBA is reserved for the arbitrator to decide, Taylor cannot have *effectively* repudiated the agreement prior to the Arbitration Panel's decision. Nor does this Court have the power to decide the question of repudiation: unlike in *Westlake* and *J.W. Peters*, the parties here have reserved this question for arbitration. When the parties have agreed to arbitrate a dispute, "a court is not to rule on the potential merits of the underlying claims." *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649 (1986).

### E.  In the alternative, summary judgment in favor of Taylor must be denied, and discovery permitted, because there are genuine questions of material fact.

Taylor makes claims about the composition of its workforce that are internally at odds. Before summary judgment could be granted, discovery is needed to determine whether they are true and whether there Taylor is playing games with the one-person unit rule to avoid its collective-bargaining responsibilities.

Although Taylor asserts that it had only a single employee for some time, and now has no employees, its own claimed facts are not clear about this. Taylor admits that Gary Taylor, whose wife is the president and sole shareholder (owner) of the corporation, works in the field "with the tools of the sheet metal trade." Plaintiff's Memo, Statement of Facts ¶ 3. Taylor further asserts

that Gary is not a statutory employee within the meaning of the NLRA, but it does not provide sufficient facts to establish this legal conclusion. Taylor had two other employees since 2012, one of whom apparently retired in December 2016. Plaintiff's Memo, Statement of Facts ¶ 14. This was nine months after the Union opened negotiations on a renewal of the CBA and less than a month before the Union demanded arbitration due to the parties' impasse.

As discussed previously, the one-person unit rule only permits revocation if an employer has a single employee, or no employees, for a stable, extended period of time. This is particularly important for § 8(f) agreements in the construction industry, where employment levels fluctuate significantly as contract jobs come and go. Employers could also play games to avoid their union obligations by laying off employees for a time, invoking the one-person unit rule, and then ramping back up their operations.

Taylor has not made a factual showing that it has a stable, extended period with a single employee or no employees. Therefore, if the Court is persuaded that the one-person unit rule might be dispositive of whether Taylor effectively repudiated the CBA, summary judgment is not appropriate and discovery should be permitted.

## <u>CONCLUSION</u>

For the reasons explained above, the pleadings show that the arbitration award here was duly issued and was within the power of the Arbitration Panel. There is no legal basis for vacating the arbitration award. Plaintiff's motion for summary judgment should be denied.


Dated this 4 day of August, 2017.                    Respectfully submitted,

_ s/ David L. Barber _
Richard G. McCracken
David L. Barber
Email: rmccracken@msh.law
         dbarber@msh.law
MCCRACKEN, STERMERMAN &
HOLSBERRY, LLP
595 Market Street, Suite 800
San Francisco, CA 94105

Katelyn S. Oldham
Email: katelyn@miketlaw.com
TEDESCO LAW GROUP
12780 SE Stark St.
Portland, OR 97233

*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 4 day of August, 2017, I served the foregoing OPPOSITION

TO MOTION FOR SUMMARY JUDGMENT on the following persons:

Thomas M. Triplett
Email: ttriplett@schwabe.com
SCHWABE, WILLIAMSON & WYATT P.C.
1211 SW 5TH Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Facsimile: 503-769-2900

Via the ECF filing system.

*/s/ Verna Owens*