Katelyn S. Oldham
Email: katelyn@miketlaw.com
TEDESCO LAW GROUP
12780 SE Stark St.
Portland, OR 97233

Richard G. McCracken (*pro hac vice*)
David L. Barber (*pro hac vice*)
Email: rmccracken@msh.law
          dbarber@msh.law
MCCRACKEN, STERMERMAN & HOLSBERRY, LLP
595 Market Street, Suite 800
San Francisco, CA 94105

*Attorneys for International Association of Sheet Metal, Air, Rail and Transportation Workers Union, Local No. 16*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **TAYLOR SHEET METAL, INC.,**<br><br>Plaintiff,<br><br>vs.<br><br>**INTERNATIONAL ASSOCIATION OF SHEET METAL, AIR, RAIL AND TRANSPORTATION WORKERS UNION, LOCAL NO. 16,**<br><br>Defendant. | No. 3:17-cv-00753-SB<br><br>DEFENDANT'S MOTION FOR RECONSIDERATION |

## RULE 7-1 CERTIFICATE

In accordance with Local Rule 7-1, Defendant, the International Association of Sheet Metal, Air, Rail and Transportation Workers Union, Local No. 16, through its counsel, conferred by telephone with counsel for Plaintiff, Taylor Sheet Metal, Inc. The parties were unable to resolve the dispute. Plaintiff opposes this motion.

## MOTION

Now comes Defendant International Association of Sheet Metal, Air, Rail and Transportation Workers Union, Local No. 16 ("Union") and moves for reconsideration of this Court's order of December 7, 2017, Dkt. 31, which adopted Magistrate Judge Beckerman's recommendation, Dkt. 27, granted Plaintiff Taylor Sheet Metal's ("Taylor") motion for summary judgment, denied the Union's motion for judgment on the pleadings, and vacated the arbitration award issued on April 24, 2017. Defendant asks the Court to reverse its judgment and instead enter judgment in favor of Defendant.

## MEMORANDUM

Defendant makes this motion pursuant to Fed.R.Civ.P. 59(e), which permits a district court to reconsider a grant of summary judgment. S*chool Dist. No. 1J, Multnomah Cty. v. ACandS, Inc.*, 5 F.3d 1255, 1262 (9th Cir. 1993). "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Id*. at 1263.

Defendant respectfully submits that this Court committed clear legal error about two distinct issues, and that the correction of even one of these errors compels a reversal of this Court's judgment.

**First**, this Court's decision relied upon the rule stated in *Ion Constuction Co. v. District Council of Painters No. 16*, 803 F.2d 1050 (9th Cir. 1986) that a district court rather than an arbitrator should decide whether an 8(f) pre-hire agreement had been effectively repudiated. Dkt. 31 at 5-6. But *Ion Construction* is no longer good law. The rule of *Ion Construction* applied only to repudiation questions that arose before the NLRB decision in *Deklewa v. International Ass'n of Bridge, Structural and Ornamental Ironworkers, Local 3*, 282 N.L.R.B. 1375 (1987). After pre-*Deklewa* cases were resolved, "the *Ion Construction* exception . . . die[d] a well-deserved natural death." *Camping Contruction Co. v. Dist. Council of Iron Workers*, 915 F.2d 1333 (9th Cir. 1990). The general rule of *Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 v. Interstate Distributor Co.,* now applies to *all* questions of repudiation of a CBA: "[W]hen the collective bargaining agreement contains a customary arbitration clause acts of repudiation and other acts of termination must be submitted to arbitration." 832 F.2d 507, 511 n. 4 (9th Cir.1987) (quoted in *Camping Construction*, 915 F.2d at 1338). Here, the parties' dispute arose long after *Ion Construction*'s natural death. Therefore, the validity of Taylor's act or acts of repudiation was a question that, per *Interstate Distributor*, "must be submitted to arbitration" rather than to a court. This means that the arbitration panel, in issuing its decision of April 24, 2017, had jurisdiction to decide whether Taylor's purported repudiation was valid—and the panel's decision on that issue was therefore within its powers and should be confirmed. The Magistrate Judge's recommendation that the award was "issued outside of the arbitrator's authority," Dkt. 27 at 8, is incorrect when the rule of *Interstate Distributor* is applied.

**Second**, this Court's decision did not consider that the controversy between the parties about the terms of a new agreement—the controversy that the arbitration panel decided—arose while the CBA was undisputedly still in full force and effect, and that therefore the duty to

Page 2 - DEFENDANT'S MOTION FOR RECONSIDERATION

arbitrate that dispute survived *even if* the CBA was later effectively repudiated. The sequence of events with respect to impasse, the demand for arbitration, and the purported repudiation of the collective-bargaining agreement matters. An employer cannot escape a duty to arbitrate once a controversy has arisen by only *thereafter* repudiating the agreement. Rather, where a dispute arises "during the life of the contract," it must be arbitrated even if the contract ends before arbitration proceedings have begun. *Nolde Bros., Inc. v. Bakery Workers*, 430 U.S. 243, 250-51 (1977). Here, the Union declared that the parties were at impasse, and demanded arbitration, on January 12, 2017. Taylor set a letter on January 23, 2017, in which it stated it intended to withdraw from the Union, and by another letter on March 10, 2017 Taylor stated that it repudiated the parties' agreement. Therefore, the uncontested facts show that the dispute over a new collective-bargaining agreement ripened into an arbitrable dispute by January 12, 2017, at which time the contract was undisputedly in full force and effect. Taylor's subsequent acts that purported to repudiate the contract could not therefore have deprived the arbitration panel of jurisdiction over the dispute, even if those acts had been effective. Therefore, even if the question of the effectiveness of the purported repudiation were for the court to decide (and, per *Interstate Distributor* and *Camping Construction*, it is not), and even if the Court were to find that the repudiation was effective, that repudiation would not invalidate the arbitration award award here because the award resolved the *pre-repudiation* dispute.

## ARGUMENT

1. **It is clear legal error to rely on the rule of *Ion Construction*; the rule for post-*Deklewa* agreements is that questions about the repudiation of pre-hire agreements are for an arbitrator, not a court, to decide.**

The rule of *Ion Construction*, on which this Court relies in adopting the Magistrate Judge's findings and recommendations, is no longer good law. When the correct and current

Page 3 - DEFENDANT'S MOTION FOR RECONSIDERATION

Case 3:17-cv-00753-SB    Document 34    Filed 12/14/17    Page 5 of 13

legal rule is applied, it compels the conclusion that in this case the question of whether Taylor's purported repudiation of the CBA was effective was for the arbitrator, not the Court, to decide.

*Ion Construction* declared a narrow *exception* to the general rule about whether questions about repudiation or termination of collective-bargaining agreements should be submitted to arbitration or should be decided by courts as a threshold issue of arbitral jurisdiction. The general rule was stated by the Ninth Circuit in *Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 v. Interstate Distributor Co.*: "[W]hen the collective bargaining agreement contains a customary arbitration clause acts of repudiation and other acts of termination must be submitted to arbitration." 832 F.2d at 511 n. 4.

*Interstate Distributor* dealt with a collective-bargaining agreement governed by section 9 of the NLRA, 29 U.S.C. § 159. Such agreements differ in some respects from agreements under section 8(f), which are known as "pre-hire" agreements because they permit an employer to agree with a union about terms and conditions of employment *before* hiring any employees that will be covered by the agreement. The NLRA permits pre-hire agreements in the construction industry because construction employers frequently staff up for large projects and then lay off all or most of their line employees during slack periods, and employees in a particular construction trade typically work for a number of different employers on successive projects. *See Deklewa*, 282 NLRB at 1380, and citations therein to the legislative history of section 8(f).

Prior to the 1987 *Deklewa* decision by the NLRB, either party to an 8(f) agreement could repudiate that agreement even during the term of the agreement, unless and until there was a determination that the union enjoyed the majority support of workers at a particular construction site. *United Brotherhood of Carpenters v. Endicott Enterprises, Inc.*, 806 F.2d 918, 921 (1986). In its *Deklewa* decision, issued February 20, 1987, the NLRB adopted a different rule, holding

that it violated the NLRA to repudiate an 8(f) agreement during its term even if there had been no showing of majority support. *Deklewa*, 282 NLRB at 1386-88.

*Ion Construction* was decided under pre-*Deklewa* law. It held that a court, not an arbitrator, should determine in the first instance whether an employer's repudiation of a section 8(f) pre-hire agreement was effective. 803 F.2d at 1051. As the *Interstate Distributor* court explained, the holding in *Ion Construction* relied on pre-*Deklewa* law about the voidability of 8(f) agreements, because under that law, "[t]he employer's right to repudiate is created by, and set forth specifically in, a federal statute rather than . . . in the collective bargaining agreement itself or in a body of common or other law applicable generally to contract matters." *Interstate Distributor*, 832 F.2d at 511 n.4.

*Deklewa* eliminated the rationale for the *Ion Construction* exception to the general rule that repudiation is a matter for the arbitrator not the courts, because under *Deklewa* there was no longer a federal labor law right to repudiate an 8(f) agreement during the contract term. The Ninth Circuit recognized this fact. In a series of three decisions in *Mesa Verde v. Northern California District Council of Laborers*, the Ninth Circuit adopted the *Deklewa* rule but declared that the circuit would continue to apply pre-*Deklewa* law, including the *Ion Constuction* exception, to cases where the controversy had arisen before *Deklewa* changed the applicable law.

This was the state of things when *Camping Construction* was decided in 1990. *See Camping Construction*, 915 F.2d at 1336-39 (discussing development of the legal background). *Camping Construction* explained that the *Ion Construction* exception to the general rule committing repudiation questions to arbitration applied only to 8(f) agreements when the acts of repudiation were alleged to have occurred prior to February 20, 1987 (when *Deklewa* was decided). *Camping Construction*, 915 F.2d at 1339. Once those cases were all resolved, the only

controversies about repudiation would be post-*Deklewa*; "the *Ion Construction* exception will shortly die a well-deserved natural death" and only the general rule as stated in *Interstate Distributor* would be good law in the Ninth Circuit. *Id.* [1] *Camping Construction* applied the *Ion* exception only because the repudiation at issue had occurred before *Deklewa* was issued.

The application of this somewhat complex doctrinal history to the present case is straightforward. *Ion Construction* died a natural death long ago, and the alleged repudiation here occurred approximately three decades after *Deklewa*. Therefore, the question of whether Taylor's purported repudiation was effective is a question that is squarely addressed by *Interstate Distributor*; *Ion Construction* does not apply. Under *Interstate Distributor*, questions about repudiation of a collective-bargaining agreement are to be resolved by an arbitrator, not a court. 832 F.2d at 511 n.4. This is the case even if the agreement is an 8(f) pre-hire agreement, as here. *Camping Construction*, 915 F.2d at 1339.

This means that the arbitration panel had jurisdiction to decide whether Taylor had effectively repudiated the agreement. The panel considered the issue and decided that Taylor's repudiation was not effective. This Court is to review that determination under the extremely deferential standard that applies to arbitration awards issued pursuant to collective-bargaining agreements. *See United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36-38 (1987). Here, it is without question that the arbitration panel based its decision on the language of the CBA, not its "own notions of industrial justice." *See id* at 38. Since the repudiation question was

---

[1] Plaintiff misleadingly urged the *Ion Construction* rule in its Response to Defendant's Objections, Dkt. 30 at 4-6. Plaintiff did so despite Defendant's having discussed *Camping Construction* and the correct *Interstate Distributor* rule in its Objections, and despite Plaintiff's citing *Camping Construction* in the very same section of its Response in which it claimed that the now-defunct *Ion Construction* rule still applied.

within the panel's jurisdiction, its resolution of that question as well as the rest of the arbitration award must be confirmed.

> **2. It is clear legal error to find that a grievance that arose while a valid collective-bargaining agreement was in effect need not be arbitrated only because the employer purported to repudiate the agreement after the grievance has arisen and after arbitration has been demanded.**

Even if the repudiation question were properly for this Court rather than for an arbitrator, and even if this Court were to determine that Taylor's purported repudiation effectively ended its obligations under the CBA, the Union would still be entitled to arbitration of its demand for a new contract under Article X, Section 8. That is because the controversy that was arbitrated—namely, the terms and conditions that would be adopted in a new CBA—arose before Taylor even purported to repudiate the agreement. It is well settled law that the termination of a collective-bargaining agreement does not permit a party to avoid arbitrating controversies that arose prior to termination. Even if it had been effective, Taylor's repudiation came too late, and it was obligated to submit the new-contract controversy to arbitration. Therefore, the arbitration panel acted within its powers by ordering the parties to execute a new collective-bargaining agreement with terms decided by the panel.

Although "the arbitration duty is a creature of the collective-bargaining agreement," the duty to arbitrate persists where a dispute arose "during the life of the contract but arbitration proceedings had not begun before termination." *Nolde Bros., Inc. v. Bakery Workers*, 430 U.S. 243, 250-51 (1977). Even if an arbitration demand is not made prior to termination, a grievance is arbitrable "when the dispute was over an obligation arguably created by the expired agreement." *Id.* at 252. A dispute "arises under" a collective-bargaining agreement and is subject to post-termination arbitration "where it involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under

the agreement, or where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement." *Litton Financial Printing Div. v. NLRB*, 501 U.S. 190, 206 (1991).

This rule has been applied where an employer effectively repudiates an 8(f) pre-hire agreement *after* an obligation has arisen. That was the situation in *Jim McNeff, Inc. v. Todd*, 461 U.S. 260 (1983): McNeff signed an 8(f) agreement, accrued obligations to benefits trust funds under that agreement, then claimed the contract did not apply to it. *Id.* at 263-64. The Supreme Court nevertheless found the agreement to be enforceable under § 301 of the LMRA and affirmed a money judgment against the employer.

This rule has also been applied where an employer seeks to avoid interest arbitration by repudiating a collective-bargaining agreement after the demand for arbitration is made. In *Local 377, RWDSU, UFCW v. 1864 Tenants Association*, the employer had agreed to a collective-bargaining agreement that included interest arbitration for a renewal agreement. No. 06 Civ. 1190, 2007 WL 634751 at *1 (S.D.N.Y. Mar. 1, 2007). An arbitration was held and an award made, to which the employer objected on the basis that the unit had a single employee. *Id.* The court reasoned that the collective-bargaining agreement was enforceable, even if the employer had no obligation under the NLRA to bargain over a single employee. *Id.* at *11. The employer's contractual obligations, not federal statutory law, made the arbitration provision enforceable and the arbitration award valid. *Id.* at *12-13.

Here, Taylor has always admitted that the 2013 SFUA (which it executed in 2014) was effective and binding. Taylor admits that Union timely opened negotiations for a renewal agreement on March 9, 2016. Petition ¶ 5, Dkt. 1. After the parties failed to reach an agreement,

the Union demanded arbitration on January 12, 2017. Dkt. 1-6 (letter from Union declaring impasse and invoking Article X, Section 8 arbitration procedure).

It was only after the controversy about the terms and conditions of the new agreement had ripened to the point of impasse, and only after the Union had demanded arbitration of that controversy, that Taylor purported to "withdraw[] from the Union" (by letter of January 23, 2017, Dkt. 12-3) and then purported to repudiate the agreement (by letter of March 21, 2017, Dkt. 1-9).

Taylor's duty to arbitrate the terms of a new contract, after timely reopening of negotiations and subsequent impasse, was a contractual duty that arose from Taylor's agreeing in 2014 to become party to the 2013 SFUA. That agreement remained in effect in January 2017 when the Union declared that negotiations for a new contract were at an impasse and invoked the arbitration procedures of Article X, Section 8.[2]

It is clear, then, that under *Nolde* and *Litton*, the dispute about the terms of a new agreement "arose under" a valid collective-bargaining agreement. Thus, the duty to arbitrate that dispute survived, *even if* that agreement terminated before arbitration was demanded or before the arbitration panel convened to hear the case. Therefore, the dispute about new contract terms was properly before the arbitration panel. And the panel's award, which simply decided upon new terms for a new agreement, was issued within the panel's powers under the 2013 SFUA.

---

[2] Article XVI, Section 1 of the agreement specifies that if timely notice of reopening is given prior to the nominal expiration date, the agreement will continue in full force and effect until a new agreement has been reached or until the completion of the interest-arbitration procedures of Article X, Section 8. Dkt. 1-3. Since Taylor admits that the Union gave timely notice of reopening in March 2016, there can be no dispute that the agreement remained in effect, by its own terms, on January 12, 2017 when the Union declared impasse and invoked interest arbitration.

Page 9 - DEFENDANT'S MOTION FOR RECONSIDERATION

It should be noted that even if *Ion Construction* still applied, the fact that the controversy here arose before any purported repudiation or termination would mean that the obligation to arbitrate this controversy survived termination. In *Ion Construction*, the employer repudiated its 8(f) agreement, and only afterwards did the union file a grievance, claiming that even after this repudiation the employer was obligated to adhere to the 8(f) agreement. 803 F.2d at 1051; *see also Mesa Verde Const. v. Northern Cal. Dist. Council of Laborers (Mesa Verde I)*, 820 F.2d 1006, 1008 (9th Cir. 1987) (employer gave notice to two unions that it was abrogating 8(f) agreements; unions then filed grievances). Thus, controversies in *Ion Construction* and *Mesa Verde I* (which are no longer good law) did not arise prior to contract termination—unlike here, where the controversy undisputedly arose while the contract was still in full force and effect.

## CONCLUSION

The Union respectfully submits that, for the reasons discussed above, the Court's order in favor of Plaintiff Taylor is based on clear errors of law and should be reconsidered. The Court should deny Taylor's motion for summary judgment and grant the Union's motion for judgment on the pleadings on its cross-petition for enforcement of the award.

Dated this 14th day of December, 2017.                    Respectfully submitted,

                                              ___/s/David L. Barber_____
                                              Richard G. McCracken
                                              David L. Barber
                                              Email: rmccracken@msh.law
                                                       dbarber@msh.law
                                              MCCRACKEN, STERMERMAN &
                                              HOLSBERRY, LLP
                                              595 Market Street, Suite 800
                                              San Francisco, CA 94105

        Katelyn S. Oldham
        Email: katelyn@miketlaw.com
        TEDESCO LAW GROUP
        12780 SE Stark St.
        Portland, OR 97233

*Attorneys for Defendant*

Page 11 - DEFENDANT'S MOTION FOR RECONSIDERATION

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of DECEMBER, 2017, I served the foregoing

DEFENDANT'S MOTION FOR RECONSIDERATION on the following persons:

  Thomas M. Triplett
  Email: ttriplett@schwabe.com
  Thomas J. Payne
  Email: TPayne@SCHWABE.com
  SCHWABE, WILLIAMSON & WYATT P.C.
  1211 SW 5TH Ave., Suite 1900
  Portland, OR 97204
  Telephone: 503-222-9981
  Facsimile: 503-769-2900

Via the ECF filing system.


                                                      _/s/Katherine Maddux_____
                                                        Katherine Maddux